STATE OF NEW JERSEY IN THE INTEREST OF W. J.

Superior Court of New Jersey
Appellate Division

Argued October 13, 1971—Decided October 20, 1971.

Before Judges KILKENNY, LABRECQUE and LANE.

*Mr. Herbert I. Waldman,* Assistant Deputy Public Defender, argued the cause for appellant *(Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Waldman,* of counsel and on the brief).

*Mr. Martin R. Kayne,* Assistant Prosecutor, argued the cause for respondent *(Mr. Joseph D. J. Gourley,* Passaic County Prosecutor, attorney; *Mr. Kayne,* on the brief).

The opinion of the court was delivered by

LANE, J. A. D. Juvenile, 17 years old, pleaded not guilty to two complaints charging him with breaking and entering. Complaint No. J–2262–69 charged that on May 14, 1970 he broke into a Mr. Softee truck with four other juveniles and stole $26. Complaint No. J–2267–69 charged that the juvenile and three others broke and entered the Club Social Rosareno with intent to steal on May 14, 1970. The trial court found that both complaints were sustained, declared the juvenile a delinquent and after reviewing his extensive record committed him to the New Jersey Reformatory (now Youth Correctional Institution Complex).

Juvenile argues that complaint No. J–2267–69 should not have been sustained because the only admissible evidence

supporting it was his uncorroborated confession and that, therefore, the matter should be remanded for resentencing.

During the investigation of the breaking and entering of the Mr. Softee truck, the juvenile started to tell the investigating officer "about a break and entry the night before at the Rosareno Social Club, 180 Passaic Street, and he named as his accomplices there. [*sic*]" Thereafter the juvenile gave the police a written statement concerning the breaking and entering of Club Social Rosareno. It was upon this statement that the trial court found the charge sustained.

Juvenile argues that the State introduced no proof of the alleged breaking and entering at the Club Social Rosareno other than his confession and that since the State failed to offer any independent corroborative proof that the crime did occur and that the juvenile was responsible, the adjudication of delinquency based on that complaint was unlawful.

 An uncorroborated extra-judicial confession cannot provide the evidential basis to sustain a conviction for crime. *State v. Lucas,* 30 *N. J.* 37, 51 (1959). *Cf. State v. Ordog,* 45 *N. J.* 347, 364 (1964), *cert.* den. 384 *U. S.* 1022, 86 *S. Ct.* 1942, 16 *L. Ed. 2d* 1025 (1966). This rule has been applied to juvenile proceedings. *State in the Interest of B. D.,* 110 *N. J. Super.* 585, 595 (App. Div. 1969) ; aff'd o. b. 56 *N. J.* 325 (1970). *Cf. State in the Interest of Carlo,* 48 *N. J.* 224, 236 (1966).

The standard determining the necessary quantum of corroboration was thoroughly discussed in *State v. Lucas,* 30 *N. J.* 37, 51–58, *supra.* Justice Burling noted that there were two views. One view was that the State must offer independent proof of the *corpus delicti.* The other view was that the extrinsic proof need not touch on the *corpus delicti* but must be of such a nature as to give the confession an aura of authenticity. In defining *corpus delicti,* the court noted the three basic elements in proof of any crime: occurrence of loss or injury; criminal causation of the loss or injury (*i. e.,* the crime was committed by someone) ; defend-

ant's identity or connection with the crime (*i. e.,* that the defendant did in fact commit the crime). The court then noted that it had been suggested that the correct definition of *corpus delicti* referred only to the fact of specific loss or injury, thus placing on the State the burden of proving only that the crime occurred. 7 *Wigmore, Evidence* (3d ed. 1940), § 2072 at 401. The prevailing view, however, was that the term *corpus delicti* also comprehends the second element, *i. e.,* someone's criminality. The court then noted that cases in New Jersey have held that a confession, corroborated by independent proof of the *corpus delicti,* will support a conviction for the crime. If such proof is lacking, it will suffice if the confession is corroborated by other evidence tending to strengthen the confession so that the criminal agency as well as defendant's connection with the crime may be proven by the confession itself. Justice Burling then held that the State must introduce independent proof of facts and circumstances which strengthen or bolster the confession and tend to generate a belief in its trustworthiness, in addition to independent proof of loss or injury:

It might be argued that the State ought also to prove criminal agency before a confession be considered as evidential, in order to assure that confession was not the imaginary product of a mentally diseased or deficient mind. But if criminal agency must be proven *aliunde* the confession, why not the defendant's connection with the crime? There seems to be little difference in kind between convicting the innocent where no crime has been committed and convicting the innocent where a crime has been committed, but not by the accused. Yet, no jurisdiction imposes such a requirement, for that would in effect inverse the rule and render the confession merely corroborative of a crime independently proven. Indeed, it is ofttimes more likely that persons giving false confessions because of mental disease or defect will confess to crimes where there is abundant proof of the two elements of the *corpus delicti* but where there is no proof as to the perpetrator. The danger is not so much that such persons will confess to non-criminal occurrences but rather to crimes committed by some one other than themselves. Under such circumstances the confessor is probably afforded greater protection by the requirement that the State must introduce such independent corroborative proof of facts and circumstances tending to generate a belief in the trustworthiness

of the confession than he is by the rule requiring independent proof of the *corpus delicti.*

Confessions, like other admissions against interest, stand high in the probative hierarchy of proof. It is for this reason that the law imposes various safeguards designed to assure that the confession is true. But safeguards for the accused should not be turned into obstacles whereby the guilty can escape just punishment. No greater burden should be required of the State than independent corroborative proof tending to establish that when the defendant confessed he was telling the truth, plus independent proof of the loss or injury. [30 *N. J.* at 57–58]

In *State v. Hill,* 47 *N. J.* 490 (1966), the defendant appealed from a murder conviction. One of his arguments was that the State failed to sustain its burden of proving the *corpus delicti* by failing to show that the victim's death occurred as a result of some criminal agency. In discussing the required proof of *corpus delicti,* Justice Schettino said in dictum:

\* \* \* As stated in *State v. Lucas,* 30 *N. J.* 37, 53 (1959) there are three basic elements in the proof of a crime: (1) the occurrence of loss or injury, (2) criminal causation of that loss or injury and (3) the identity of the defendant as the perpetrator of the crime. However, it is firmly established in this State that the term *corpus delicti* embraces only the first two of these elements — loss or injury and criminal causation. *State v. Portee,* 46 *N. J.* 239 (1966); *State v. Greely,* 11 *N. J.* 485 (1953); *State v. Gleitsmann,* 62 *N. J. Super.* 15 (App. Div.), certif. denied 33 *N. J.* 386 (1960), 7 *Wigmore, Evidence* (3d ed. 1940) § 2072, p. 401. Notes, 13 *Vand. L. Rev.* 561 (1960); 103 *U. Pa. L. Rev.* 638 (1955).

Thus the term *corpus delicti* is not and should not be a shorthand way of attacking the sufficiency and the weight of the State's proof concerning the manner and means by which the crime was committed. It is clear that the *corpus delicti* is proved where the State, *aliunde* a confession, has produced facts and circumstances from which the jury can infer that a loss has occurred and that that loss was caused by or was a result of a criminal act. *State v. Lucas, supra; State v. Greely, supra.* See 41 *C. J. S. Homicide* § 312, p. 16. [47 *N. J.* at 496]

The language in *State v. Hill, supra,* would seem to indicate that all that was required of the State where a confession is involved is a showing of facts sufficient to indicate

a loss had occurred and that the loss was caused by a criminal act. However, that case did not involve a confession.

In *State v. Lucas, supra,* 30 *N. J.* 37, defendant appealed from a judgment of conviction entered pursuant to a jury verdict of murder in the first degree. The murder had occurred as a result of a fire set by defendant. One of the grounds of appeal was that the trial court erred in denying a motion for acquittal at the end of the State's case. Defendant had confessed, and the issue was whether the State's independent corroborative proof was sufficient to present a jury question. Defendant's confession contained several explicit details referring to the occurrence of the crime. The State's proofs independently corroborated each detail. Defendant alleged the fire occurred in the office of the rectory of a church. The State introduced proof indicating that that was the origin of the fire. Defendant accurately described the layout and contents of the office, including "paper books" on the mantel. The State's proofs provided a similar description of the office. By his own admission defendant had never been in the room before. Defendant described chairs lined up against the wall. The State showed those chairs had been in the rectory office only for several months prior to the fire. Defendant alleged he threw on the fire gasoline carried in a glass bottle. The State's evidence showed eight fragments of glass found in the office at a point where the fire was believed to have occurred. Defendant said he poured gasoline over some "paper books." The State proved that charred telephone books were found on the floor in the office. In addition, after making his confession, defendant reenacted the manner in which he said he started the fire. The court noted the "spontaneity" of this re-enactment further corroborated the confession. Apparently, at no time had the State supplied defendant with facts of the crime during the interrogation process. The court found that the facts recited in defendant's confession could only have been known by the one who started the fire. There was not in the record any evidence tending to explain how the defendant acquired

the incriminating information which he recited to the police. In fact, the State offered testimony that one of its officers gave defendant false information concerning the fire in order to test the veracity of the confession.

In *State v. Ordog, supra,* 45 *N. J.* 347, defendants had confessed and were convicted of murder in connection with a robbery. On appeal they argued that denial of a judgment for acquittal was error because there was insufficient corroboration of the confessions. The confessions contained exact details of the crime. The State's witnesses, including a co-defendant, gave corroborative testimony as to the kind of weapons used, the number and position of persons at the scene of the crime, the fact that one defendant took the wallets, the amount of the share of the robbery and the fact that the defendants went to a diner on Route 130 after the murder. The court found there was sufficient corroborative evidence.

In *State v. Ordog,* 45 *N. J.* 347, and *State v. Lucas,* 30 *N. J.* 37, the State's independent proofs clearly established the trustworthiness of the confessions involved and the occurrence of the loss or injury.

In *State in the Interest of B. D., supra,* 110 *N. J. Super.* 585, the court found the confessions involved lacked substantial corroboration and standing alone were insufficient evidence of guilt. In addition, the court found that the facts on the record created serious doubts as to the voluntariness and trustworthiness of the confessions and that they should have been excluded. The juvenile had appealed from an adjudication by the Juvenile Court finding that he had committed acts of juvenile delinquency. The facts showed that two victims had been stabbed to death. The only proof connecting the juvenile with the killings was his confessions. The independent proofs of the State established the facts of the crime. The State argued that since these facts were similar to those contained in the confessions, the test of corroboration had been met. The court rejected this argument, noting that the confessions contained practically no verified de-

tails other than the statements of having stabbed the two victims. In addition, the court noted that the part of the confessions referring to one of the killings was inconsistent with the autopsy report. The juvenile said he wielded the knife in his left hand; the autopsy report indicated the knifing was done by a right-handed person. The court noted that many of the facts of the crime had been told to the juvenile by the officers before his confessions. The juvenile testified that before his confessions the police had been after him constantly. In order to get them "off his back" he confessed, piecing together the details of the crime from what he had been told by the officers. Since the record contained a rational explanation of how the juvenile knew the facts of the killings, no real inference of trustworthiness could be drawn from any consistency shown.

 To sustain a conviction based upon a confession the State must show that the confession is trustworthy by proof of facts and circumstances independent of the confession and that the loss or injury confessed to did in fact occur.

 Here the independent evidence offered by the State to corroborate the complaint of breaking and entering the Club Social Rosareno is not sufficient to corroborate the confession. It consisted of the hearsay testimony by a police officer that he had a report of the breaking and entering which named the juvenile as a participant. The officer also testified that a janitor of the club had seen the juvenile in the area. There was no testimony at all corroborating any of the details in the confession, i. e., that two other persons were with the juvenile, that they broke in through the back window by pushing the wood in, that they searched a desk and took some money out, that they did not actually take away any money or liquor because they were scared off. At the very best the proof indicated that there was a report of a breaking and entering at the club and that the juvenile might have been seen in the area. There is nothing to corroborate the trustworthiness of the confession. There is very little to corroborate the fact of the loss or injury. The State

did not meet the standard of *State v. Lucas, supra,* 30 *N. J.* 37. The adjudication of delinquency based on the complaint of breaking and entering the Club Social Rosareno must be reversed.

We call attention to Chief Justice Weintraub's comments in his concurring opinion in *State in the Interest of Carlo, supra,* 48 *N. J.* 224. In that case the court found inadmissible as evidence certain involuntary confessions given by two juveniles. The court held that the constitutional safeguard of voluntariness governing the use of confessions applies to juvenile proceedings. Chief Justice Weintraub in concurring said:

> \* \* \* because of the ease with which some boys may yield to suggestion, I would insist upon a *quantum* of corroboration we do not now demand with respect to confessions of adults. [48 *N. J.* at 245]

The State concedes that if the finding on complaint J–2267–69 is reversed, the juvenile is entitled to resentencing.

█ The order of the Passaic County Juvenile and Domestic Relations Court sustaining complaint No. J–2267–69 and the adjudication of delinquency based on that complaint is reversed. The matter is remanded for resentencing.